# EXHIBIT A

# CONFIDENTIAL AGREEMENT

## RECITALS

WHEREAS, Nelle Harper Lee ("Lee") authored the novel *To Kill a Mockingbird* ("Novel"); and

WHEREAS, Lee entered into an agreement with The Dramatic Publishing Company ("Dramatic") dated June 25, 1969 (the "Dramatic Agreement"); and

WHEREAS, consistent with the Dramatic Agreement, Christopher Sergel wrote a stage adaptation of the Novel (the "Sergel Play"); and

WHEREAS, Lee entered into an agreement with Rudinplay, Inc. dated as of June 29, 2015 (the "Atticus Agreement"), which by agreement dated December 12, 2018 has been assigned to Atticus LLC ("Atticus"); and

WHEREAS, consistent with the Atticus Agreement, Aaron Sorkin ("Sorkin") wrote a stage adaptation of the Novel (the "Sorkin Play"); and

WHEREAS, Lee died on February 19, 2016; and

WHEREAS, Tonja Carter ("Carter") is the personal representative of the Estate of Nelle Harper Lee (the "Estate"); and

WHEREAS, Harper Lee LLC ("LLC") owns the copyright in the Novel; and

WHEREAS, Dramatic, the Estate, and LLC engaged in an arbitration proceeding under the auspices of the American Arbitration Association (AAA Case No. 01-19-0000-7463) concerning disputes arising out of the Dramatic Agreement (the "Arbitration"); and

WHEREAS, the arbitrator in the Arbitration entered a Modified Final Award on February 16, 2022, and a Revised Clarification of Interim Award on October 11, 2022 (collectively, the "Corrected Final Award"); and

WHEREAS, the United States District Court for the Northern District of Illinois confirmed the Corrected Final Award in Case No. 1:21-CV-05541-MFK (the "Confirmation Action") and in connection therewith entered a Final Judgment Order dated January 13, 2023 (the "Final Judgment Order");

WHEREAS, the Final Judgment Order contains a definition of Non-First-Class Theaters and Productions; and

WHEREAS, the Estate and LLC appealed the Final Judgment Order to the United States Court of Appeals for the Seventh Circuit (Case No. 23-1309) (the "Seventh Circuit Appeal"); and

WHEREAS, Atticus initiated an action against Dramatic in the United States District Court for the Southern District of New York (Case No. 1:22-cv-10147-DLC) (the "New York Action"); and

WHEREAS, a final judgment on the merits was entered in the New York Action on August 1, 2023; and

WHEREAS, an attorneys' fee award against Dramatic and in favor of Atticus was entered in the New York Action on October 31, 2023; and

1

WHEREAS, Dramatic appealed the merits judgment in the New York Action to the United States Court of Appeals for the Second Circuit (Case No. 23-1226) (the "Second Circuit Merits Appeal"); and

WHEREAS, Dramatic appealed the entry of the attorneys' fee award against it in the New York Action to the United States Court of Appeals for the Second Circuit (Case No. 23-7751) and Atticus filed a cross-appeal to recover certain fees that were denied (Case No. 23-7850) (together, the "Second Circuit Fee Appeals"); and

WHEREAS, the United States Court of Appeals for the Second Circuit issued its decision in the Second Circuit Merits Appeal and the Second Circuit Fee Appeals on July 29, 2025, and in that decision affirmed the district court's judgment granting declaratory relief to Atticus, vacated the award of attorneys' fees, and remanded to the district court to further consider Atticus's application for attorneys' fees; and

WHEREAS, the Estate, LLC, and Dramatic have reached an agreement to resolve certain controversies between them arising out of the Dramatic Agreement and the Atticus Agreement; and

WHEREAS, as part of the overall resolution of the dispute, the Estate and LLC will also enter into a letter agreement with Atticus and Sorkin (the "Estate/Atticus/Sorkin Agreement"), and Dramatic will enter into an agreement with Atticus and Sorkin (the "Dramatic/Atticus/Sorkin Agreement").

WHEREFORE, the Estate, LLC, and Dramatic (collectively, the "Parties"), in consideration of the payments required herein, the mutual releases contained herein, and other good and sufficient consideration, the receipt of which is hereby acknowledged, agree as follows:

TERMS

1. The Estate shall make a payment in the amount of ▮▮▮▮ to Dramatic by wire transfer to be received by September 9, 2025.

2. The Estate shall make an additional payment in the amount of ▮▮▮▮ to Dramatic by wire transfer to be received by September 9, 2025. This payment shall be made in consideration for Dramatic's release in Paragraph 15 of its claim and demand against the Estate and LLC for attorneys' fees and costs arising out of the New York Action, the Second Circuit Merits Appeal, the Second Circuit Fee Appeals, the Arbitration, the Confirmation Action, and the Seventh Circuit Appeal.

3. In the event that either or both of the payments set forth in Paragraphs 1 and 2 are not received by Dramatic by September 9, 2025, the Estate shall owe Dramatic a penalty of ▮▮▮▮ per day until said payments are received.

4. The Parties shall file an agreement to dismiss the Seventh Circuit Appeal with prejudice not later than 10:00am CDT on September 4, 2025. The agreement to dismiss shall use the language set forth in the attached Exhibit A.

2

5. Dramatic agrees that it will not make any additional claim against the Estate or LLC for attorneys' fees and costs arising out of the New York Action, the Second Circuit Merits Appeal, the Second Circuit Fee Appeals, the Arbitration, the Confirmation Action, and the Seventh Circuit Appeal that are incurred after Dramatic executes this Agreement; provided, however, that nothing in this Paragraph shall preclude Dramatic from seeking indemnification for its attorneys' fees and costs arising out of a future act or omission of the Estate or LLC that gives rise to an indemnification obligation under this Agreement, the Dramatic Agreement (as amended pursuant to this Agreement), the Final Judgment Order (as it may be amended pursuant to this Agreement), or an arbitration award that may issue following any future arbitration proceeding between the Parties.

6. For purposes of this Agreement, the term "Non-First-Class Theaters and Productions" shall have the same meaning as it is defined in the Final Judgment Order.

7. Dramatic agrees that the Sorkin Play can be licensed anywhere in the world in any theater and for any type of production, including without limitation in any Non-First-Class Theaters and Productions.

8. The Parties agree that the following language in Paragraph 2(a) of the Dramatic Agreement (other than the definition of the term "Play") shall be deemed deleted and of no continuing effect: "but agrees that said dramatization (herein called the "Play") is to be the only one the amateur acting rights of which the Owner will permit to be leased and/or licensed." The Parties further agree that the following language in Paragraph 2(b) of the Dramatic Agreement shall be deemed deleted and of no continuing effect: "the Property and/or." The Parties further agree that all remaining rights and obligations in the Dramatic Agreement remain in place unless they are expressly modified by or are inconsistent with the terms of this Agreement. For avoidance of doubt, the Parties agree Dramatic will have the non-exclusive right to license worldwide the original and revised versions of the Sergel Play (as described in the Corrected Final Award and Final Judgment Order) in Non-First-Class Theaters and Productions. The Parties further agree that nothing in the Dramatic Agreement shall prevent the Estate or LLC from allowing, supporting, or promoting the licensing of the Sorkin Play in any theater or production, nor shall the Estate have any liability under the Dramatic Agreement, including indemnity obligations arising under the Dramatic Agreement, for such actions. This Agreement shall not otherwise affect the determination in the Final Judgment Order that the terms of the original grant in the Dramatic Agreement survive Lee's notice pursuant to the Copyright Act of termination of that grant dated April 16, 2016. For avoidance of doubt, the Parties agree that the Estate has no right to license or allow the licensing of any theatrical version of the Novel for Non-First-Class Theaters and Productions other than the Sergel Play and the Sorkin Play. Subject to the provisions of this Agreement, neither the Estate nor LLC will do anything to prevent or hinder Dramatic from the full exercise of its rights under the Dramatic Agreement (as amended by this Agreement).

9. Dramatic acknowledges and agrees that neither the Estate nor LLC has granted and will not grant international translation rights to Dramatic for the Sergel Play and that neither

3

the Estate nor LLC is restricted in each's respective ability to grant such rights for the Sorkin Play.

10. The Parties agree that the Estate and LLC will no longer be bound by the following portions of the Final Judgment Order (and the corresponding portions of the Corrected Final Award): Paragraph 5 and all its subparts and Paragraph 6(h).

11. Subject to and without diminishing the effect of Paragraph 8 above, the Parties agree as follows:

   a. Paragraph 6(a) of the Final Judgment Order (and the corresponding portion of the Corrected Final Award) shall be deemed to be deleted from the Final Judgment Order (and the corresponding portion of the Corrected Final Award).

   b. The obligations under Paragraph 6(d) of the Final Judgment Order (and the corresponding portion of the Corrected Final Award) are modified to exclude payments received by the Estate or LLC to the extent such payments are consistent with the terms of this Agreement.

   c. Paragraph 6(e)(i) of the Final Judgment Order (and the corresponding portion of the Corrected Final Award) shall be deemed to be modified to state that the Estate may license the parties set forth in that Paragraph 6(e)(i) consistent with the terms of this Agreement.

   d. Paragraph 6(e)(iii) of the Final Judgment Order (and the corresponding portion of the Corrected Final Award) shall be deemed to be modified so that "wrongful licensing" shall mean licensing with conditions that seek to prevent or limit licensing of the Sergel Play.

   e. Paragraph 6(g)(iii) of the Final Judgment Order (and the corresponding portion of the Corrected Final Award) shall be deemed to be modified to state that it does not apply to a legal or administrative action brought by a third party to whom non-first-class rights have been transferred in conformity with this Agreement.

12. The Parties agree that the Estate will remain bound by Paragraph 6(g)(ii) of the Final Judgment Order (and the corresponding portion of the Corrected Final Award) subject to the following modification:

"The Estate shall indemnify and hold harmless Dramatic from or against any and all losses, including reasonable attorneys' fees, arising from any legal or administrative action brought against Dramatic by Scott Rudin, Sorkin, Rudinplay, Rudinplay Affiliates, Atticus, any of their licensees or assignees, or anyone on their behalf connected in any way with Dramatic exercising its non-exclusive worldwide rights to license non-first-class productions of the Sergel Play under the terms of the Final Judgment Order as modified by this Agreement. For avoidance of doubt, the Estate shall owe no indemnity obligation to Dramatic for any claim alleging that (a) Dramatic or its licensees have improperly utilized proprietary elements (i.e., any elements protectable under copyright, trademark or other applicable laws) of any production of the Sorkin Play; or (b) Dramatic's licensee made a

4

material deviation from the script of the licensed version of the Sergel Play. The Estate shall also owe no indemnity obligation to Dramatic for any claim in which a court expressly determines that Dramatic violated the 25-mile licensing restriction provision of the Dramatic Agreement and such determination is final and non-appealable.

"For further avoidance of doubt, nothing in this provision, or in this Agreement, shall give Dramatic or its licensees the right to license or produce a first-class production, as defined in the Final Judgment Order, of the Sergel Play, nor shall Dramatic have any right to indemnification from the Estate under the preceding paragraph with respect to such first-class production should Dramatic or its licensee license or produce a first-class production, as defined in the Final Judgment Order, of the Sergel Play and a Court expressly finds in a final judgment order that Dramatic licensed a production falling within the definition of "first-class rights" as set forth in the Judgment and all appeals with respect to such final judgment order have been exhausted."

13. The Parties agree to jointly file a motion in the United States District Court for the Northern District of Illinois to modify the terms of the Final Judgment Order in a manner consistent with the terms of Paragraphs 10, 11, and 12 above, in the form attached to this Agreement as Exhibit B following dismissal of the Seventh Circuit Appeal. The Parties further agree that the refusal by that court to so modify the Final Judgment Order shall not render any part of this Agreement ineffective or void.

14. To the extent that Dramatic is sued by anyone claiming that Dramatic's licensing of the Sergel Play in conformity with the Dramatic Agreement (as interpreted in the Final Judgment Order and as modified by this Agreement) violates the rights of that claiming party arising from any judgment or settlement in American Arbitration Association Case No. 01-15-0004-7377 (the "Peck Arbitration" Case No. 22-cv-59 (S.D. Ala.), the Estate and LLC will defend, indemnify and hold harmless Dramatic from and against any and all monetary losses or other losses whatsoever incurred in connection with such claims, including reasonable attorneys' fees. To the extent that the Estate does not have a conflict of interest and seeks to appoint counsel, Dramatic will have the right of approval of counsel, which will not be unreasonably withheld. If a licensee of Dramatic is alleged to have violated a third party's rights arising out of any judgment or settlement in the Peck Arbitration by streaming video of a production, posting a video of a production on YouTube, any other website, or any social media platform, televising a production, or otherwise exceeding the terms of the licensee's license, the Estate and LLC shall have no obligation under this paragraph in the event that Dramatic is sued in connection with such allegations. Any dispute by the parties concerning the reasonableness of fees incurred under this Paragraph shall be decided by an independent third party jointly appointed by the Estate and Dramatic to determine the reasonableness of fees.

15. The Estate and LLC agree to release, remise, and forever discharge Dramatic and its present and former parent companies, subsidiary companies, affiliated companies, officers, directors, managers, shareholders, trustees, employees, members, agents, personal representatives, representatives, affiliates, insurers, attorneys, heirs, beneficiaries, executors, and each of their successors and assigns (collectively, the

"Dramatic Released Parties") of and from any and all claims, demands, causes of action, and suits of every kind and nature, known or unknown, which the Estate or LLC may now have or may have had at any time heretofore or may have at any time hereafter against the Dramatic Released Parties arising from, resulting from, or related to any act or omission occurring at any time in the past up to and including the present including, but not limited to, any and all claims, demands, causes of action, and suits of every kind and nature, known or unknown, which the Estate or LLC may now have or may have had at any time heretofore or may have at any time hereafter arising from, resulting from, or related to (a) the matters that were asserted or could have been asserted in the Arbitration; (b) the licensing of the Sorkin Play in Non-First-Class Theaters and Productions at any time in the past; (c) the use of the Towers revision to the Sergel Play by any of Dramatic's licensees; or (d) any attorneys' fees or costs owed in connection with the Arbitration, the Confirmation Action, the Seventh Circuit Appeal, the New York Action, the Second Circuit Merits Appeal, or the Second Circuit Fee Appeals; provided, however, that the Estate and LLC do not release the Dramatic Released Parties from claims for royalties owed by Dramatic to the Estate for productions of the Sergel Play that occurred prior to the date of this Agreement; and provided further that nothing in this Paragraph shall release Dramatic from its obligations under this Agreement. The Estate and LLC represent they are currently unaware of any unpaid royalties due from Dramatic that would have been due at or before the time the royalty statement was issued by Dramatic to the Estate in August 2024.

16. Dramatic agrees to release, remise, and forever discharge the Estate, LLC, and their present and former parent companies, subsidiary companies, affiliated companies, officers, directors, managers, shareholders, trustees, employees, members, agents, personal representatives, representatives, affiliates, insurers, attorneys, heirs, beneficiaries, executors, and each of their successors and assigns (collectively, the "Estate/LLC Released Parties") of and from any and all claims, demands, causes of action, and suits of every kind and nature, known or unknown, which Dramatic may now have or may have had at any time heretofore or may have at any time hereafter arising from, resulting from, or related to any act or omission occurring at any time in the past up to and including the present including, but not limited to, any and all claims, demands, causes of action, and suits of every kind and nature, known or unknown, which Dramatic may now have or may have had at any time heretofore or may have at any time hereafter against the Estate/LLC Released Parties from, resulting from, or related to (a) the matters that were asserted or could have been asserted in the Arbitration; (b) the licensing of the Sorkin Play in Non-First-Class Theaters and Productions at any time in the past; (c) the use of the Towers revision to the Sergel Play by any of Dramatic's licensees; or (d) any attorneys' fees or costs owed in connection with the Arbitration, the Confirmation Action, the Seventh Circuit Appeal, the New York Action, the Second Circuit Merits Appeal, or the Second Circuit Fee Appeals; provided, however, that nothing in this Paragraph shall release the Estate or LLC from their respective obligations under this Agreement. Nothing in this release shall be read to limit any claim or action by Dramatic against Charles Towers.

17. The Estate represents and warrants that neither it, LLC, nor any party affiliated with the Estate has received royalties or other payments associated with performances of the Sorkin Play in Non-First-Class Theaters or Productions, and that no such royalties or payments (including any advance or option payments) are currently owed to the Estate, LLC, or any entity affiliated with them. The Estate further represents and warrants that it is unaware of any potential or threatened litigation against Dramatic contemplated by Atticus, Sorkin, or any other third party.

18. The Estate and LLC represent and warrant that, to the best of their knowledge, they have provided to Dramatic, including in the Arbitration, all documents in their possession pertaining to Charles Towers' adaptation of the Sergel Play and that they are unaware of any use of the Towers adaptation of the Sergel Play beyond what was introduced into evidence at the Arbitration. Dramatic makes the release in Paragraph 15 based upon this representation.

19. Each of the undersigned parties agrees to maintain strict confidentiality of the financial terms of this Agreement, although the parties are free to discuss the fact that a settlement was reached, to discuss any of the litigation and to reference the substance of the statement set forth below. Notwithstanding the preceding, any of the undersigned parties may disclose the terms of this Agreement to their respective accountants, attorneys, and others for whom disclosure is commercially necessary; provided that any such third party must agree to maintain the confidentiality of the financial terms of the Agreement before such terms are disclosed to the third party. In addition, the Parties will agree to this statement being issued publicly: "The Estate of Nelle Harper Lee has purchased the non-exclusive rights from The Dramatic Publishing Company to license Aaron Sorkin's adaptation of *To Kill a Mockingbird* worldwide in non-first-class theaters. Dramatic Publishing Company will continue to exercise its rights to license Christopher Sergel's adaptations of *To Kill a Mockingbird* worldwide in non-first-class theaters."

20. The Estate and LLC represent and warrant that they are unaware of any party ███████ ███████████████ who has indicated it has unasserted claims against Dramatic that it intends to pursue in litigation.

21. This Agreement shall be governed by the laws of the State of Illinois without regard to its conflict of law principles.

22. Each of the undersigned parties acknowledges and agrees that this Agreement is the product of a joint drafting effort such that its terms should not be construed more strictly against any of the undersigned parties as the drafter.

23. Each of the undersigned parties agrees that the heirs, administrators, executors, successors and assigns of the undersigned parties shall be fully bound by this Agreement and all provisions hereof, just as each of the undersigned parties is bound, and each of the undersigned parties agrees that each and every provision of this Agreement inures to the benefit of the other undersigned parties and her or its heirs, administrators, executors, successors and assigns.

7

24. Each of the undersigned parties represents and warrants that he, she, or it has the requisite authority to enter into this Agreement and to provide the releases set forth in this Agreement. Each of the undersigned parties further represents and warrants that this Agreement is a valid and binding obligation of such Party enforceable in accordance with its terms.

25. Each of the undersigned parties executes this Agreement voluntarily, in the belief that it is in her or its best interests, with full knowledge of its contents, with full understanding, and having been advised of the contents of this Agreement by his, her or its independent legal advisers.

26. This Agreement shall not be effective unless and until the ▮▮▮▮ Agreement becomes effective, the ▮▮▮▮ Agreement becomes effective, and the United States Court of Appeals for the Seventh Circuit dismisses the Seventh Circuit Appeal. If this Agreement does not become effective by the time that any of the Parties is obligated to take any action under any provision of this Agreement, then the Party need not comply with that obligation; provided, however, that if the ▮▮▮▮ Agreement have been fully executed by 10:00a.m. CDT on September 4, 2025, then the Parties agree to fulfill the requirement under Paragraph 4 of this Agreement. If this Agreement has not become effective by the time that the substantive portion of the oral argument for the Seventh Circuit Appeal begins on September 5, 2025, then (a) the Parties agree to file in open court a joint withdrawal of the submission they made pursuant to Paragraph 4 of this Agreement; and (b) all of the terms of this Agreement shall be null and void and none of the Parties will have any further obligation under it. Dramatic is unaware of the substance or terms of the ▮▮▮▮ Agreement and will bear no responsibility for any representations or statements made in such agreement. The Estate is unaware of the substance or terms of the ▮▮▮▮ Agreement and will bear no responsibility for any representations or statements made in such agreement. Notwithstanding the preceding sentence, the Estate understands that in order for Dramatic to enter into the ▮▮▮▮

27. This Agreement can be executed in counterparts, each of which will be deemed an original, but all of which together shall constitute one and the same instrument.

28. All notices or other information sent in connection with this Agreement (a "Notice") must be in written form. A Notice shall be deemed delivered on the day after it has been placed for next business day delivery with a recognized overnight courier such as

Federal Express or UPS (a "Courier"). To be effective, the Notice must be transmitted to the addresses identified in this Notice section of this Agreement, with a copy transmitted by Courier to the applicable physical address and an electronic copy sent to the applicable email address. A Notice shall be deemed effective if it has been transmitted in accordance with this paragraph, irrespective of whether the Party sending the Notice has learned that it could not be delivered because the applicable address, including the email address, is no longer valid.

<u>Notice to Dramatic</u>

Christopher Sergel, III, President
The Dramatic Publishing Company
311 Washington St.
Woodstock, IL 60098-3308
Email: csergel@dpcplays.com

With a copy to

Kevin Tottis
TottisLaw
401 North Michigan Avenue, Suite 530
Chicago, Illinois 60611
Email: ktottis@tottislaw.com

<u>Notice to the Estate</u>

Tonja B. Carter, as personal representative of the Estate of Nelle Harper Lee
P.O. Box 278
Monroeville, AL 36461-0278
Email: tonjacarter@harperleellc.com

With a copy to

Matthew H. Lembke
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, AL 35203
Email: mlembke@bradley.com

<u>Notice to the LLC</u>

Tonja B. Carter
Harper Lee LLC
P.O. Box 278
Monroeville, AL 36461-0278
Email: tonjacarter@harperleellc.com

With a copy to

Matthew H. Lembke
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, AL 35203
Email: mlembke@bradley.com

29. The Recitals above are incorporated into the terms of this Agreement.

IN WITNESS WHEREOF, each of the undersigned parties has hereunto ascribed her or its signature and seal on this Agreement on the date indicated.

THE DRAMATIC PUBLISHING COMPANY

_____
By Christopher Sergel, Its President

Dated_____

THE ESTATE OF NELLE HARPER LEE

*Tonja B. Carter* (signature)
_____
By Tonja B. Carter, Its Personal Representative

Dated 9-3-25

HARPER LEE LLC

*Tonja B. Carter* (signature)
_____
By Tonja B. Carter, Its Manager

Dated 9-3-25

10

With a copy to

Matthew H. Lembke
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, AL 35203
Email: mlembke@bradley.com

29. The Recitals above are incorporated into the terms of this Agreement.

IN WITNESS WHEREOF, each of the undersigned parties has hereunto ascribed her or its signature and seal on this Agreement on the date indicated.

THE DRAMATIC PUBLISHING COMPANY

By Christopher Sergel, Its President

Dated September 3, 2025

THE ESTATE OF NELLE HARPER LEE

By Tonja B. Carter, Its Personal Representative

Dated_____

HARPER LEE LLC

By Tonja B. Carter, Its Manager

Dated_____

10